

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-6-1995

# Jesurum vs. HHS

Precedential or Non-Precedential:

Docket 94-5398

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Jesurum vs. HHS" (1995). *1995 Decisions.* Paper 32.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/32

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

------------

No. 94-5398

------------

GISELA JESURUM

Appellant

v.

SECRETARY OF THE UNITED STATES
DEPARTMENT OF HEALTH & HUMAN SERVICES

------------

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 92-02566)

------------

Submitted Under Third Circuit LAR 34.1(a)
Wednesday, January 25, 1995

PANEL:  BECKER, LEWIS and GARTH, Circuit Judges

------------

(Opinion filed February 6, 1995)

Abraham S. Alter
Langton & Alter
2096 St. Georges Avenue
P.O. Box 1798
Rahway, New Jersey 07065

Attorney for Appellant

Anthony J. LaBruna, Jr.
Office of United States
   Attorney
970 Broad Street
Room 502
Newark, New Jersey 07102

<u>Attorney for Appellee</u>

-----------

OPINION OF THE COURT

-----------


GARTH, <u>Circuit Judge</u>:

Gisela Jesurum seeks review of the district court's May 6, 1994 order which affirmed the Secretary of Health and Human Services' denial of her claim for Supplemental Security Income Benefits ("disability benefits"). The district court had jurisdiction to review the final order of the Social Security Administration Administrative Law Judge ("ALJ") pursuant to 42 U.S.C. § 405(g). We have jurisdiction over the district court's order, affirming the Secretary's decision, pursuant to 28 U.S.C. § 1291. Because we find that the record cannot justify the ALJ's finding that Jesurum could perform the full range of light work, as defined by the Secretary, we will reverse and remand for further proceedings to determine whether Jesurum is capable of performing work or is capable of engaging in any substantial gainful activity.

                                   I.

        Jesurum, age 45, is a native of the Dominican Republic
with an eighth grade education and limited English language
skills.  She presently lives in Elizabeth, New Jersey with her
son (age 17), two daughters (age 15 and 12) and granddaughter
(age 2).  She does not have a driver's license and was last
employed in 1971 as a sewing machine operator.  Jesurum left that
position at the birth of her first child.  Since then, she has
received AFDC, food stamps and Medicaid to assist with living
expenses.

        On March 8, 1990, Jesurum filed an application for
disability benefits on account of an allegedly disabling back
condition.  The Social Security Administration denied her claim
initially and again on reconsideration.  Jesurum requested a
hearing before an Administrative Law Judge.

        At a hearing on November 15, 1990, the ALJ found that
Jesurum could perform the full range of light work and thus
denied her benefits pursuant to Rule 202.16 of Table 2, Appendix
2, 20 CFR § 202.  On April 16, 1992, the Appeals Council denied
further review, thereby entering the Secretary's final decision.

        Jesurum appealed the Secretary's determination to the
district court.  On May 6, 1994, the district court concluded
that the ALJ's determination was supported by substantial
evidence and affirmed the Secretary's denial.  Among other
things, the district court approved the ALJ's finding that
Jesurum could lift and/or carry up to 20 pounds and could sit for
four hours of an eight hour day for 15-20 minutes at a time.  He

apparently accepted Dr. Miranda's (Jesurum's physician's) conclusion that Jesurum should be trained for sedentary work, just as he accepted the ALJ's finding that Jesurum's back pains were not incapacitating and that she could perform the full range of light work.

## II.

When reviewing the Secretary's denial of disability benefits, we are limited to a determination whether the Secretary's denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It is less than a preponderance of the evidence but more than a mere scintilla. Id.

To receive disability benefits, claimants must demonstrate that they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.A. § 423(d)(1)(A) (1991). The Secretary uses a five step process to determine if a person is eligible for Supplemental Security Income benefits. In the first two steps, the claimant must establish (1) that she is not engaged in "substantial gainful activity" and (2) that she suffers from a severe medical impairment. Bowen v. Yuckert, 482

U.S. 137, 140-41 (1987).  If the claimant shows a severe medical impairment, the Secretary determines (3) whether the impairment is equivalent to an impairment listed by the Secretary as creating a presumption of disability.  Id. at 141.  If it is not, the claimant bears the burden of showing (4) that the impairment prevents her from performing the work that she has performed in the past.  Id.  If the claimant satisfies this burden, the Secretary must grant the claimant benefits unless the Secretary can demonstrate (5) that there are jobs in the national economy that the claimant can perform.  Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985).  When the claimant's residual functioning capacity fits within the definitions promulgated in Department of Health and Human Service regulations, the Secretary can meet her burden of demonstrating that work exists for the claimant in the national economy by reference to tables promulgated by administrative rulemaking (the "grids").  Heckler v. Campbell, 461 U.S. 458, 468-70 (1983).

Jesurum's condition did not qualify as one of the listed impairments which would automatically make her eligible for benefits, but she showed that her condition prevented her from undertaking any prior work.  Thus, her eligibility turned on the Secretary's ability to show that work existed for her in the national economy.

## III.

Jesurum complained of disabling lower back pain, resulting from degenerative osteoarthritis of the lumbar

vertebrae of the lower back.  The record reflects at least three accidents, one fall and two car accidents, which created or exacerbated her back condition.  She contended that her condition prevented her from lifting much other than bread and from doing housework or other light labor.  She testified that she could not walk for extended periods without difficulty and pain.  In light of her middle age, minimal education, and lack of work experience, she claimed that these symptoms make her disabled. She offered the following medical evidence to support her claim.

A February 1990 CT scan showed minimal disc space bulging and minimal joint degenerative change at the edges between the third and fourth and between the fourth and fifth lumbar vertebrae.  There was no evidence of disc herniation. Three months of physical therapy, prescribed by her treating physician between March and June, indicated persistent lower back pain and left knee pain, which responded slowly, if at all, to physical therapy.  In August 1990, her chiropractor placed her on disability for a period of two months from August 10, 1990 to October 10, 1990.

In September 1990, Jesurum was examined by a board certified orthopedist, Dr. Miranda.  Based on an examination in which Jesurum showed tenderness in the groin and lower back and difficulty in climbing onto the examination table, Miranda diagnosed Jesurum as having chronic lumbosacral sprain, inflammation of the spinal cord around the neck, and chronic cervical sprain.  He concluded that Jesurum could lift and carry 15-20 pounds for one third of an eight hour day, could stand and

walk, and could sit for four hours in an eight hour day in intervals of approximately 15-20 minutes at a time. She could not balance objects, crouch, crawl, or push or pull objects. Dr. Miranda recommended that Jesurum be trained for "sedentary work avoiding lower back aggravation." Record at 103; see also note 2 infra. Dr. Miranda's conclusion was consistent with the conclusions of Dr. Munoz, Jesurum's treating physician, who opined that Jesurum had degenerative osteoarthritis of the lumbosacral spine with radiculitis for which he presribed medication and regular treatment. App. 75, 105.

The ALJ pointed to other medical evidence that he believed offset her claims of disability. A May 1990 radiology report of an X-ray of Jesurum's lower back stated that she had normal lower vertebrae, normal alignment, and a normal joint at the hip. Dr. Miranda found that Jesurum had a normal gait, could squat, stand on her heels and toes, and had a normal range of movement in her arms and feet. Further, the ALJ noted that Jesurum had not taken any of the Codeine prescribed for her by one of her doctors eight days prior to the hearing. Jesurum claimed that she does not take the pain killer often because it aggravates her diagnosed stomach condition. As a result, her physician recommended that she take the Codeine only when necessary. Finally, the ALJ noted that she had traveled to Providence, Rhode Island two years prior to the hearing.

IV.

Based on this evidence and Dr. Miranda's determination that Jesurum could sit intermittently for four hours of an eight hour day and lift up to twenty pounds, the ALJ found that Jesurum could perform the full range of "light work" as defined in 20 U.S.C. 416.967(b). Applying Rule 202.16 of Table 2, Appendix 2, Subpart P of 20 CFR part 404 (the "grid"), the ALJ's findings regarding her ability to perform light work, her age, work experience, and education level required a finding under the grid that Jesurum was not disabled.

Our review of the evidence presented reveals that the record was critically deficient of facts which could support a determination that Jesurum could perform the full range of light work as defined by the Secretary. Accordingly, use of the grid was inappropriate and the case will have to be remanded for a determination, without use of the grids, that work exists for Jesurum in the national economy.

Dr. Miranda was the physician most qualified to evaluate Jesurum's back condition and gave the most explicit statement of her residual functioning capacity. No evaluation of a prior doctor and no prior radiology or other diagnostic report suggests anything which conflicts with Dr. Miranda's determinations. Nor do the other examinations provide sufficient evidence to justify a finding that Jesurum's residual capacity exceeded those limits recommended by Dr. Miranda.[1]

---

[1] The only other medical evidence which might support an extension in Jesurum's functioning capacity beyond Dr. Miranda's prescribed limits was the May radiology report of an X-ray of Jesurum's spine. While this report showed normal vertebrae, X-

Jesurum's testimonial evidence also does not suggest any expansion in Jesurum's residual work capacity. Jesurum testified to experiencing frequent and debilitating pain which made her unable to lift more than eight to ten pounds. The ALJ was required to consider these subjective complaints seriously, even if they were not fully confirmed by object medical evidence. Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981). Here, in fact, the medical evidence supports her claim of lower back pain, even if not to the extent of the complaints in her testimony. Second, her trip to Rhode Island two years prior to the hearing is a type of sporadic and transitory activity that cannot be used to show an ability to engage continuously in substantial gainful activity. Nelson v. Bowen, 882 F.2d 45, 48 (2d Cir. 1989). Thus, the trip does not undermine the limitations defined by Dr. Miranda. Finally, while a patient's failure consistently to use prescribed pain medication may undermine the patient's claims of debilitating pain, see Williams v. Bowen, 790 F.2d 713, 715 (8th Cir. 1986), Jesurum's reluctance to take Codeine would not support a finding that Jesurum could perform light work when her prescribing physician's recommendations are consistent with her failure to take the medication so as to avoid aggravating her gastritis.

---

rays give a less accurate picture of soft tissue abnormalities, such as those suffered by Jesurum. See Mosby's Medical, Nursing, & Allied Health Dictionary 374 (4th ed. 1994). Thus, the report does not justify disregarding the earlier CT scan results and Dr. Miranda's evaluation which disclosed significant back problems.

Accordingly, whether substantial evidence exists to support the ALJ's determination depends on whether Dr. Miranda's evaluation justifies a determination that Jesurum could perform a full range of "light work" as defined by the Secretary. 20 C.F.R. § 416.967(b) defines "light work" in the following terms:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

The Secretary has indicated that her definition is equivalent to the Department of Labor's definition of light work in the Dictionary of Occupational Titles ("DOT"). See 20 C.F.R. § 416.967. The DOT defines light work as:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirement are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm and leg controls; and/or (3) when the job requires working at a production rate pace entailing

> the constant pushing and/or pulling of
> materials even if the weight of those
> materials is negligible.  NOTE: The constant
> stress and strain of maintaining a production
> rate pace, especially in an industrial
> setting, can be and is physically demanding
> of a worker even though the amount of force
> exerted is negligible.

2 Department of Labor, Dictionary of Occupational Titles 1013 (4th ed. 1991).  The Secretary has further explained this definition in Social Security Ruling 83-10 by stating that light work generally requires the ability to stand and carry weight for approximately six hours of an eight hour day.  Social Security Ruling 83-10 reprinted in 1983-1991 West's Social Security Reporting Service 29 (1992) [hereinafter Soc. Sec. Ruling 83-10].

The ALJ can judge the availability of work in the national economy for the applicant using the "grid" if the claimant can perform "substantially all" of the tasks required for "light work" and "sedentary work" but cannot perform "substantially all" the tasks of "medium work."  See 20 CFR part 404, subpart P, Appendix 2, Rule 200.00(d); Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993); Walker v. Bowen, 826 F.2d 996, 1002-03 (11th Cir. 1987); Soc. Sec. Ruling 83-10 at 26, 30; Social Security Ruling 83-11 reprinted in 1983-1991 West Social Security Reporting Service 34 (1992) [hereinafter Soc. Sec. Ruling 83-11].

Dr. Miranda's report cannot justify a conclusion that Jesurum is capable of performing substantially all of the defined tasks required to meet the light work standard.  Dr. Miranda stated Jesurum could lift approximately 15-20 pounds for only one

third of an eight hour day.  However, the Secretary's definition requires the ability to stand, walk, lift, and/or carry objects of at least 10 pounds for approximately six hours of an eight hour day.  Soc. Sec. Ruling 83-10 at 29.  Dr. Miranda further stated that Jesurum's medical condition prevented her from pushing or pulling as a part of her work.  Pushing and pulling objects or levers, either in a seated or standing position, is a prerequisite to much light work.  Id. at 29; 20 CFR 416.967(b); 2 Department of Labor, Dictionary of Occupation Titles 1013 (4th ed. 1991).  Finally, Dr. Miranda limited Jesurum's ability to sit to four hours of a work day at intervals of fifteen to twenty minutes.  While light work does not require sitting so much as the ability to stand or work at a table, the Secretary has recognized that an inability to remain in either a sitting or standing position for the majority of the workday makes it inappropriate to categorize the applicant as capable of doing either sedentary or light work.  In Social Security Ruling 83-12, the Secretary wrote:

> The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting.  Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work.  (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc. would still be able to perform a defined range of work).

There are some jobs in the national
economy -- typically professional and
managerial ones -- in which a person can sit
or stand with a degree of choice. . . .
However, most jobs have ongoing work
processes which demand that a worker be in a
certain place or posture for at least a
certain length of time to accomplish a
certain task.  Unskilled types of jobs are
particularly structured so that a person
cannot sit or stand at will.

Social Security Ruling 83-12 reprinted in 1983-1991 West's Social

Security Reporting Service 39-40 (1992) [hereinafter Soc. Sec.

Ruling 83-12].

The Courts of Appeals have recognized that it is

inappropriate to apply the grids to determine the eligibility of

the claimant for jobs in the national economy under facts similar

to those present here.  Two courts have reversed the Secretary's

denials, based on a finding that the claimant could perform light

work, when the claimant had to alternate between sitting and

standing throughout the day.  Gibson v. Heckler, 762 F.2d 1516,

1521 (11th Cir. 1985) (use of the grids was inappropriate where

claimant could not sit or stand for more than four hours at a

time); Wages v. Secretary of Health & Human Services, 755 F.2d

495, 497-98 (6th Cir. 1985) (use of the grids inappropriate where

claimant needed to sit or stand alternately as necessary

throughout the day).

We have also identified three cases which reject the

Secretary's finding that a claimant can do light work in the face

of nearly identical weight bearing and sitting limitations as

those faced by Jesurum.  White v. Secretary of Health and Human

Services, 910 F.2d 64, 66 (2d Cir. 1990) (government lacked substantial evidence that claimant could do light work when, though claimant could lift twenty pounds occasionally, he could sit for only four hours in an eight hour day -- two to three hours without interruption -- and could not push or pull); Strunkard v. Secretary of Heath and Human Services, 841 F.2d 57, 61 (3d Cir. 1988) (evidence that claimant could only sit for three hours, could not push or pull, and could only stand for three hours could not justify a finding that the claimant was capable of doing light work); Jennings v. Bowen, 703 F. Supp. 833, 836, 840 (D. Ariz. 1988) (government lacked substantial evidence to show that the claimant could do light work when claimant could only occasionally lift 10-20 pounds, could sit for only fifteen minutes without interruption for up to four hours, and had a limited ability to walk for extended periods).

We, like these courts, do not believe that Jesurum's limitations, as demonstrated by the medical record, can support a conclusion that she could perform the full range of light work.[2] Accordingly, use of the grids, here Table 2, to determine whether

---

[2]  Dr. Miranda recommended that Jesurum be trained for "sedentary work avoiding lower back aggravation."  In making this evaluation, Dr. Miranda did not intend the legal definition of "sedentary" used by the Secretary.  Rather, he intended the more pervasive use of the word -- "characterized by or requiring sitting or slight activity."  Webster's Third International New World Dictionary 2054 (unabridged ed. 1966).  Jesurum could not perform "sedentary" work, as legally defined, because sedentary work requires the ability to sit for at least six hours of an eight hour day.  Soc. Sec. Ruling 83-10 at 26.  We note that the inability to do sedentary work may itself be grounds for reversing a determination that a claimant can do light work. Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

substantial work existed for her in the economy was inappropriate. 20 CFR part 404, Subpart P, Appendix 2, Rule 200.00(d). Because the ALJ relied exclusively on the grids in arriving at his determination that Jesurum was not disabled, we must reverse the decision.

V.

Having determined that the Secretary's decision must be reversed, we must determine whether it is appropriate to remand this case or to direct the payment of benefits. While it was improper to apply the grids in this case, the statute permits the Secretary to prove that the claimant is capable of performing other jobs in the national economy through other methods. Preferably, this is done through the testimony of a vocational expert. Adorno v. Shalala, Secretary of Heath and Human Services, slip op. at 8 (3d Cir. Nov. 9, 1994); Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987). To give the Secretary this opportunity, it is appropriate to return this case for further proceedings.

VI.

For the foregoing reasons, the order of the district court will be reversed with directions to the district court to remand this case to the Secretary for further proceedings consistent with this opinion.