**Eileen M. SINCAVAGE, Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security.**

No. 05–1797.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Feb. 13, 2006.

Feb. 28, 2006.

Robert A. Kurtz, Shenandoah, PA, for Appellant.

Kelly C. Connelly, Social Security Administration, Philadelphia, PA, for Appellee.

Before: SCIRICA, Chief Judge, BARRY and FISHER, Circuit Judges.

OPINION OF THE COURT

FISHER, Circuit Judge.

Eileen M. Sincavage appeals from the order of the District Court affirming the decision of the Commissioner of Social Security to deny her application for disability benefits. Sincavage argues that the record does not support the administrative law judge's finding that her panic attacks were not a "severe impairment." We agree and will remand this case for further proceedings.

I.

Sincavage applied for disability benefits from the Social Security Administration in March 2001. She claimed that she suffered from several physical conditions, including carpal tunnel syndrome and Graves' Disease, and several mental conditions, including panic attacks, that rendered her disabled. An administrative law judge accepted testimony from Sincavage and reports from treating physicians and consultants, who had examined Sincavage at the Commissioner's request.

The judge determined that Sincavage's physical conditions qualified as a "severe impairment" but discounted her allegations of panic attacks. The judge explained,

without further analysis, that Sincavage had "made no mention of any panic attacks" during a psychological examination and had not described the "alleged anxiety or panic attack problem ... to any treater as persistent." Because neither the examiner nor the treating physicians had found "any evidence of or [made] any diagnosis of panic attacks," the judge determined that Sincavage's panic attacks were not a "severe impairment." (A.R.105–08.)

There are several inconsistencies between these conclusions and the administrative record. Foremost is that, contrary to the judge's finding, Sincavage did mention her panic attacks during the psychological examination. The psychologist, Mr. David M. Pastucka, expressly noted in his report that Sincavage had stated that she suffered from, among other things, "panic attacks." Nothing in the report questions the veracity of this assertion; indeed, Mr. Pastucka remarked that Sincavage had "served as a good historian." Although Mr. Pastucka did not make a "diagnosis" of anxiety or panic attacks, these topics were outside of the scope of the referral, which was limited to "assessment of current intellectual functioning" and a test for depression. (A.R.250–51.)

The judge also failed to note several documented instances in which physicians had recognized that Sincavage suffered from panic attacks and had prescribed courses of treatment. Dr. Ralph H. Starkey, an endocrinologist, reported in 1998 that Sincavage had experienced panic attacks, and he prescribed medication to treat the condition. In 1999, Sincavage's primary care physician, Dr. Matthew J. Kraynak, confirmed that her medical histo-

ry included psychiatric problems related to "anxiety." And, in 2001, Dr. Yasser Khoudeir, who had examined Sincavage at the request of the Commissioner, stated that Sincavage had "a history of panic attacks that are accompanied by palpitations" and suggested that she had a "[p]anic disorder." (A.R.198–99, 201, 210, 219, 221.)

The administrative law judge did not discuss these reports, but simply concluded that the panic attacks were not a "severe impairment." The judge determined, without assessing the impact of these attacks on Sincavage's ability to work, that Sincavage's physical conditions did not prevent her from performing a significant number of jobs in the national economy. On this basis, the judge denied the claim for disability benefits. The Appeals Council of the Social Security Administration subsequently denied a request for review.

Sincavage then filed a civil action in the District Court for the Middle District of Pennsylvania, seeking review of the Commissioner's decision. She argued, among other things, that the administrative law judge had "erred when she failed to find that [the] panic attacks were a severe impairment." A magistrate judge assigned to the case, noting that Sincavage "did nothing to get counseling and had refused her doctor's offer to start her on antidepressants," found that the administrative law judge had "amply discussed the relevant medical reports from [Sincavage's] treating and examining doctors and determined that none of them diagnosed [the] panic attacks as severe." He recommended that the appeal be denied. The District Court adopted the report and recommendation without modification.[1]

---

1. Sincavage did not file timely objections to the report and recommendation of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C) (stating that objections may be filed within ten days of service). Of course, this neither waived her right to appeal nor limits the scope of our jurisdiction. *See Henderson v. Carlson,* 812 F.2d 874, 878–79 (3d Cir.1987) ("[T]he failure of a party to object to a magistrate's legal conclusions may result in the loss

This timely appeal followed. We have jurisdiction under 28 U.S.C. § 1291.

## II.

Like the District Court, we may disturb the decision of the Commissioner only if it is not supported by "substantial evidence." *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir.2002) (noting that our review of the district court's decision is plenary). Substantial evidence refers to the minimum level of proof that "a reasonable mind might accept as adequate to support a conclusion." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.,* 48 F.3d 114, 117 (3d Cir.1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Put simply, the record must disclose some rational basis for the findings of the administrative law judge. *See Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 119 (3d Cir.2000).

## III.

The record in this case does not support the finding that Sincavage's panic attacks were not a "severe impairment." An impairment, once established, must be considered "severe" unless the evidence demonstrates that it is merely a "slight abnormality," having "no more than a minimal effect on an individual's ability to work." *Newell v. Comm'r of Soc. Sec.,* 347 F.3d 541, 546–47 (3d Cir.2003) (quoting Soc. Sec. Rul. 85–28 (1985)). "Reasonable doubts on severity are to be resolved in favor of the claimant." *Id.*

It is unclear from the administrative opinion whether the judge doubted the existence of Sincavage's panic attacks, or merely their frequency and intensity. In

of the right to *de novo* review in the district court—but not in the loss of the statutory

either event, the record does not support the judge's findings.

The panic attacks were documented in medical histories and treatment records from 1998 through 2001. Sincavage had reported the condition to her treating physicians and the examining psychologist, and she confirmed these accounts in her written submissions and testimony during administrative proceedings. (A.R.38–39, 41–43, 177–79, 191, 198–99, 201, 210, 219, 221.) There is nothing in the record to call into doubt that Sincavage did, in fact, suffer from some form of panic attacks.

Less clear is whether these attacks were frequent or intense. Sincavage claimed that they occurred on a periodic basis, sometimes several times a day, and that they lasted for fifteen minutes to three hours. (A.R.42.) These claims find support in the treatment notes of Dr. Starkey, who reported in 1998 that Sincavage had experienced four attacks in the previous two-week period. (A.R.199.) Other medical records do not describe the number or impact of the attacks, but do confirm that Sincavage had "a history of panic attacks." (A.R.219.)

The administrative law judge, without addressing these reports, discounted Sincavage's allegations because she purportedly "did not mention any panic attacks" to Mr. Pastucka during the psychological examination. Three times during the course of the administrative opinion, the judge emphasized this fact as a reason to reject Sincavage's claims. (A.R.105–06, 108.) The judge also noted that Mr. Pastucka had not found "any evidence of or [made] a diagnosis of panic attacks" and that the attacks "have [not] been described to any treater as persistent." (A.R.108.)

right to appellate review.").

None of these assertions is accurate. Sincavage did mention her attacks to Mr. Pastucka, who identified the complaints in his report and characterized Sincavage as "a good historian." (A.R.250–51.) Mr. Pastucka's failure to "diagnose" Sincavage with panic attacks was not a result of his disagreement with her claims, but most likely stemmed from the limited scope of his referral: to test for intellectual capacity and depression-related disorders. (*See* A.R. 250.) Moreover, Sincavage had informed several prior physicians of the frequency and persistence of the attacks. (A.R.198–99, 201, 210, 219, 221.) It is simply incorrect to state that Sincavage did not mention her condition, or its intensity, to Mr. Pastucka or her doctors.

The administrative law judge found that Sincavage had "a propensity to exaggerate the intensity of her problems" and that "the medical records do not match up with [her] testimony regarding the severity of her impairments." (A.R.14, 107.) These concerns do not warrant a finding that the panic attacks were not severe. Sincavage testified that she sometimes suffered multiple attacks in a single day. The medical records do not confirm these allegations, but neither do they contradict them. The mere lack of corroboration of Sincavage's testimony does not provide a basis to reject her claims. *See* Soc. Sec. Rul. 96–7p (1996) ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."); *see also* 20 C.F.R. § 402.35(b)(1) ("Social Security Rulings ... are binding on all components of the Social Security Administration.").

The administrative law judge also faulted Sincavage for failing to make "inquiries about counseling [or] any appointments" for psychological treatment. (A.R.107.) Again, this cannot support a conclusion that her panic attacks were not severe. Sincavage was asked during the hearing why she did not seek counseling, and she explained that none of her physicians had referred her to a psychologist. When told that she could have sought treatment on her own, she remarked: "[C]an you do that? I wasn't aware...." (A.R.38–39, 41–43.) Sincavage also stated, in a written questionnaire, that she had not sought psychological treatment because she lacked adequate insurance coverage. (A.R.181.) The administrative law judge did not consider the veracity or adequacy of these explanations, despite binding agency admonitions that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek ... medical treatment without first considering any explanations that the individual may provide ... that may explain ... [the] failure to seek medical treatment." Soc. Sec. Rul. 96–7p.

None of the reasons offered by the administrative law judge warrants a finding that Sincavage's panic attacks were not severe. Sincavage reported this condition and its intensity to physicians in 1998, 1999, and 2001 and to the examining psychologist in 2002. (A.R.198–99, 201, 210, 219, 221, 250–51.) Medical records corroborate that she received treatment for these attacks and had been preliminarily diagnosed with an anxiety disorder. (A.R.198–99, 221.) Her failure to seek independent psychological counseling, without more, does not provide grounds to discount her claims of a serious and persistent problem. At the very least, the record creates "[r]easonable doubts" as to whether her condition could be characterized as merely a "slight abnormality," having "no more than a minimal effect on [her] ability to work." *See Newell,* 347 F.3d at 546–47 (quoting Soc. Sec. Rul. 85–28). These

doubts should have been resolved in Sincavage's favor, and her panic attacks should have been deemed a "severe impairment." *See id.*

## IV.

The record compels a finding that Sincavage's panic attacks constitute a "severe impairment." The administrative law judge should have considered, in accordance with the five-step process for evaluating a disability, whether her panic attacks met or equaled one of the impairments listed in agency regulations, *see* 20 C.F.R. § 404.1520(d); *see also id.* pt. 404, subpt. P, app. 1, § 12.06 (discussing "anxiety related disorders," including "panic attacks"), and whether the attacks—along with Sincavage's physical conditions—prevented her from "mak[ing] an adjustment to other work," *see id.* § 404.1560(c)(2). *See also id.* § 404.1520 (outlining five-step process); *Plummer v. Apfel,* 186 F.3d 422, 428 (3d Cir.1999) (same). We express no opinion on the outcome of these analyses, which are for the administrative law judge in the first instance. *See Newell,* 347 F.3d at 549.

We will reverse the order of the District Court and remand this case with instructions that the matter be remanded to the Commissioner for further proceedings in accordance with this opinion.